[No. 23319-0-I.   Division One.   January 14, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN AARON STATEN, *Appellant*.

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Hogan, Deputy,* for respondent.

WINSOR, J.*—John Staten appeals a judgment and sentence for two counts of first degree robbery. We affirm.

Staten was arrested on the night of May 24, 1988, for a May 17, 1988, bank robbery. He was subsequently charged with committing that robbery, as well as a May 24, 1988, bank robbery. In both robberies the robber carried a lunch box which he claimed contained a bomb.

Staten's original speedy trial deadline was August 6, 1988. For reasons not contained in the record, that deadline was extended. Trial was then set for September 12, 1988. Trial did not proceed as scheduled, however, because Staten refused to come to court. Staten claimed to have medical problems which caused him so much pain he could not attend trial. A jail physician who examined Staten disagreed with Staten's self–diagnosis and opined that "defendant was in sufficient physical condition to come to Court." Nevertheless, the trial judge permitted Staten to waive speedy trial for a period sufficient to permit him to go "to Harborview Medical Center for diagnosis of whatever ailment he may have and treatment if it's necessary." Trial was then reset for October 17, with a speedy trial expiration date of October 24, 1988.

On September 28, 1988, in a proceeding for which there is no report of proceedings, Staten moved to substitute

---

*Judge Robert W. Winsor was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

counsel. He had been represented by Frank Calero of the Public Defenders Association (PDA). A PDA lawyer subsequently contacted the Associated Counsel for the Accused (ACA) and asked that one of their lawyers be present at a follow–up hearing on September 30. The ACA lawyer appeared at the September 30 hearing and informed the court that his office was opposed to representing Staten "[u]nless there is a legal conflict, *i.e.*, PDA has represented a victim or a witness or something", and that ACA would not accept a trial date before the first of December.[1]

Staten then addressed the court, arguing that

> Public Defender does not have time to prepare my case. I have been in jail over four months. I have yet to see my attorney anywhere but in court. I cannot reach him by phone. There are a lot of things in my case that are just not ready. I believe Mr. Calero is an excellent attorney because I liked his arguments in the pretrial motions, but he just doesn't have time to prepare my case. I don't believe any public defender has time to prepare my case.
>
> Your Honor, I know it boils down to economic problems, but I just want to ask the Court: How much is a human life worth? . . . It is simply difficult to prove I did not commit the crime if an attorney has no less than thirty or forty people on his case load. It is hard for an attorney to keep track of what's going on when he has forty people to deal with. . . . Your Honor, I feel like I cannot get a fair trial from the Public Defender, not because they are not good attorneys, but because they just don't have the time to prepare my case so I can have a fair trial.

Based on this and Staten's September 28 arguments, the trial judge interpreted Staten's position to be that he would only be satisfied if a private lawyer were appointed to represent him. The judge denied Staten's motion to substitute.

On October 19 the parties returned to court for pretrial matters. Attorney Calero informed the trial judge that he did not think he could adequately represent Staten because Staten would not listen to his advice. Staten then presented a written motion to substitute counsel alleging that Calero

---

[1] Because he was on vacation, Staten's attorney, Calero, was not present at either of the September substitution hearings. Other lawyers from Calero's office were present.

had not: conferred with him concerning preparation of the defense, communicated with him, subpoenaed defense witnesses, performed critical investigations, prepared an affirmative defense or prepared necessary motions. Staten's motion also alleged that Calero had failed "to declare prejudice and/or conflict against declarant and due to such failure has taken on the role of a surrogate prosecutor". Staten offered no evidence supporting these allegations.[2]

The judge then asked Calero's opinion as to whether Staten's allegations were accurate. Calero said he did not think that they were. The judge asked Calero whether he had prepared the case and whether he was ready to represent Staten. Calero answered affirmatively.[3] Noting that trial had already been delayed since September 12 and that he was satisfied Calero was prepared, capable and experienced sufficiently to represent Staten adequately, the trial judge denied Staten's motion.

Staten responded that if he could not have new counsel, he would represent himself, although that alternative was "definitely against my wishes." After discussing the risks of self–representation with Staten, the judge ruled that Staten could proceed pro se with Calero serving as his legal assistant.

Staten next sought a continuance to prepare for trial. Satisfied that all discoverable materials had been provided Calero and that Calero could immediately turn them over to Staten, the trial judge denied the continuance. The record makes it clear that the trial judge's ruling was influenced by his opinion that Staten was simply trying to delay trial:

[2]When the trial judge asked Staten whether he had anything to add to his written materials, Staten said they covered everything, despite having filed a declaration stating that "at the hearing on this motion declarant will provide the necessary evidence to support the claim herein alleged".

[3]The record supports Calero's response. His trial brief and proposed jury instructions are dated September 6, 1988.

I have indicated to you before that you used various tactics to try to delay the matter, and we are not going to delay it any longer. We are going to proceed with the trial. The Court made . . . a well prepared lawyer available to you, and you have chosen to do otherwise. Having made that choice, that is the choice you have to live with.

The matter proceeded to trial before a jury. The State's evidence included: (1) testimony that a fingerprint on the lunch box used in the May 24 robbery was Staten's; (2) testimony that when arrested, Staten had two $20 bills with serial numbers matching numbers on "bait bills" taken in the May 24 robbery;[4] (3) in–court identifications of Staten by two bank tellers present at the May 17 robbery and another present at the May 24 robbery; and (4) bank photographs of the May 17 robbery which allegedly showed clearly that Staten was the robber.[5] In his defense, Staten relied on all of the eyewitnesses' failure to describe the robber as having only one arm,[6] and on some of the eyewitnesses inability to select his picture in a photo montage prepared by police. This, he alleged, created a reasonable doubt as to whether he had committed the robberies. The jury disagreed and found Staten guilty as charged.

## VOLUNTARINESS

Staten contends that constitutional error occurred when the trial court denied his October 19 motion to substitute counsel, because the denial caused him to involuntarily proceed pro se. The State responds that because Staten's motion was properly denied, no constitutional error occurred. We agree with the State.

---

[4]In the May 24 robbery, the teller gave the robber $20 bills for which the serial numbers had been previously recorded. Such prerecorded bills are called "bait bills."

[5]The photographs are not in the record. The characterization of the photographs as clearly identifying Staten was made by the prosecutor in closing argument.

[6]Staten had a prosthesis.

■ Requiring a defendant to choose between waiving counsel and continuing with present counsel is not constitutionally offensive unless defendant's objections to existing counsel are such that he has a right to new counsel. *United States v. Padilla,* 819 F.2d 952, 955 (10th Cir. 1987); *accord, Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976); *State v. Sinclair,* 46 Wn. App. 433, 436–37, 730 P.2d 742 (1986), *review denied,* 108 Wn.2d 1006 (1987). In other words, "even when a defendant does not want to appear pro se, if he fails to provide the court with legitimate reasons why he is entitled to reassignment of counsel, the court can require that he either waive or continue with appointed counsel." *Sinclair,* 46 Wn. App. at 436. A defendant's conclusory, unsubstantiated statement that his or her current counsel is unqualified does not entitle a defendant to new counsel. *Wilks v. Israel,* 627 F.2d 32, 36 n.4 (7th Cir. 1980), *cert. denied,* 449 U.S. 1086 (1981); *see also State v. Shelton,* 71 Wn.2d 838, 839–40, 431 P.2d 201 (1967) (substitution motion properly denied when defendant failed to support motion with reasons for his alleged lack of confidence in counsel and did not point out how he thought counsel had been lax in preparing his case). Thus, for example, it is not error to force a defendant to appear pro se or continue to be represented by existing counsel when defendant gives the trial judge only "a vague account of how counsel had lied and had not shown him the State's fingerprint evidence" and "failed to articulate any reason he felt justified counsel's replacement, other than his general discomfort with her representation." *Sinclair,* 46 Wn. App. at 436.

■■ Here, Staten failed to provide the trial court with legitimate and sufficient grounds why he was entitled to substitute counsel. The principal ground Staten alleged at his September motion was that *any* public defender would be too overworked to properly prepare his case. Staten cites no case in which this reason has been accepted as sufficient

for substituting counsel, and we have located none.[7] The circumstances of Staten's October motion to substitute are somewhat different in that Staten's reasons, if substantiated, could have been grounds for granting a motion to substitute. However, Staten failed to provide any evidentiary support for his allegations. Unsupported general allegations of deficient representation are inadequate to support a motion to substitute, particularly when the motion to substitute is brought shortly before or during trial. *Wilks,* 627 F.2d at 36; *see also McKee v. Harris,* 649 F.2d 927, 931 (2d Cir. 1981), *cert. denied,* 456 U.S. 917 (1982); *Shelton,* 71 Wn.2d at 839.

### ASSISTANCE OF COUNSEL

Staten also contends that he was denied effective assistance of counsel at his two motions to substitute. Concerning his September motion, Staten argues that he was denied effective representation because his appointed attorney, Calero, was not there and Calero's representative "essentially stood mute at the hearing"; and because the ACA attorney argued against substitution. Concerning his October motion, Staten argues that because he made serious allegations against Calero, Calero had a conflict of interest with him, and thus necessarily was ineffective. Neither of these arguments is persuasive.[8]

---

[7]Staten also complained of Calero's inaccessibility. Although this is a legitimate grievance, it is not one that requires a trial judge to grant a motion to substitute, particularly when, as here, a substitution would delay trial for several weeks. A trial-delaying substitution is ordinarily justifiable only when counsel has not prepared a defense or has a conflict of interest, or there is a complete breakdown in communication between defendant and counsel such that defendant's right to a fair trial is threatened. *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir. 1981), *cert. denied,* 456 U.S. 917 (1982); *Maynard,* 545 F.2d at 278.

[8]We question the validity of Staten's implicit claim that when a defendant moves to substitute counsel, an attorney must argue as an advocate in favor of the motion. Our research indicates a contrary rule, namely, that such a motion is a pro se motion in which the moving defendant must personally establish his or her need for substitute counsel. *Cf. McKee,* 649 F.2d at 931–32 (*defendant* must show good cause to warrant substitution of counsel during trial); *United States v. Williams,* 594 F.2d 1258 (9th Cir. 1979) (error to deny motion to substitute when, 1

■ To establish ineffective representation a defendant must show: (1) that defense counsel's performance fell below an objective standard of reasonableness; and (2) that this deficiency prejudiced defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). If an ineffective assistance claim can be resolved on one prong of this test, the court need not address the other prong. *E.g., State v. Woo Won Choi,* 55 Wn. App. 895, 905, 781 P.2d 505 (1989), *review denied,* 114 Wn.2d 1002 (1990). We need to address only the prejudice prong here.

■ Prejudice resulting from ineffective representation is established when the defendant shows that there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceeding would have been different. *State v. Thomas,* 109 Wn.2d 222, 226, 743 P.2d 816 (1987). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Italics omitted.) *Thomas,* 109 Wn.2d at 226 (quoting *Strickland,* 466 U.S. at 694).

Here, the State's evidence against Staten was overwhelming. No matter who represented Staten, there was virtually no chance that he would be acquitted. Accordingly, we hold that Staten's ineffective assistance of counsel claims fail for lack of a showing of prejudice.

Staten seeks to avoid this prejudice–based analysis, particularly as to his October motion, by arguing that because he asked for substitute counsel he and Calero had conflicting interests. When an attorney's representation of a client

month before trial, *defendant* made a prima facie showing of irreconcilable conflict between himself and his appointed attorney); *Shelton,* 71 Wn.2d at 839 (substitution motion properly denied when *defendant* failed to support motion with reasons for his alleged lack of confidence in counsel and did not point out how he thought counsel had inadequately prepared his case); *Sinclair,* 46 Wn. App. at 436–37 (*defendant's* failure to present valid reason to replace appointed counsel warranted denial of motion to substitute). Consequently, an inquiry into whether a defendant received adequate legal assistance in presenting his or her motion to substitute seems irrelevant, except perhaps to ensure that the appointed counsel, or his or her representative, was available to answer questions at the hearing on defendant's motion.

is affected by a conflict of interest, no showing of actual prejudice is required for reversal. *See generally State v. Philips,* 108 Wn.2d 627, 642, 741 P.2d 24 (1987).

■ Staten's argument fails. In *State v. Stark,* 48 Wn. App. 245, 738 P.2d 684, *review denied,* 109 Wn.2d 1003 (1987), we rejected a similar "automatic" conflict of interest argument.

> Stark urges us to adopt a rule requiring the appointment of substitute counsel in cases in which a defendant wishes to argue his counsel's ineffectiveness. In these cases, he argues, counsel is faced with an impossible conflict of interest unless he is allowed to withdraw, and the defendant is denied representation unless substitute counsel is appointed. However, if a defendant could force the appointment of substitute counsel simply by expressing a desire to raise a claim of ineffective assistance of counsel, then the defendant could do so whenever he wished, for whatever reason. *See Sinclair,* 46 Wn. App. at 436–37 (defendant cannot force appointment of substitute counsel simply by filing complaint against current counsel). We decline to adopt such a rule.

48 Wn. App. at 253.[9] Staten provides us with no reason to deviate from this analysis.

## CONTINUANCE

Next Staten asserts that the trial court abused its discretion when it denied his day–of–trial motion for a continuance. Staten sought a continuance to prepare his pro se defense.

■■ "The grant or denial of a motion for continuance is within the trial court's discretion and will not be disturbed absent a showing that the court abused its discretion and the defendant was prejudiced thereby." *State v. Barnes,* 58 Wn. App. 465, 471, 794 P.2d 52, *review granted on other grounds,* 115 Wn.2d 1022 (1990). In ruling on a motion for continuance, a trial judge may consider whether the motion was brought to delay trial and whether prior continuances have been granted. *See Barnes,* 58 Wn. App.

---

[9]To establish a conflict of interest, Staten relies on *United States v. Ellison,* 798 F.2d 1102 (7th Cir. 1986), *cert. denied,* 479 U.S. 1038 (1987). His reliance is misplaced because *Ellison* did not concern a motion to substitute counsel.

at 471 ("To guard against abuse and to discourage motions made merely for delay, it is generally required that a stronger showing be made in support of subsequent motions for continuance").

No abuse of discretion is shown here. The judge's decision was based on the entirely tenable ground of avoiding further delay. Trial had already been continued two times and Staten had previously delayed trial for over 1 month by making unfounded medical complaints.

■ Nor has Staten made a showing of prejudice resulting from the trial court's ruling. A denial of continuance will be overturned "only upon a showing that the defendant was prejudiced or that the result of the trial would likely have been different had the motion been granted." *State v. Kelly*, 32 Wn. App. 112, 114, 645 P.2d 1146, *review denied*, 97 Wn.2d 1037 (1982). Given the strength of the State's evidence, it is not at all likely that the outcome of trial would have been different had the trial judge granted Staten's motion for continuance.

## Closing Argument

Staten also makes two assignments of error relating to closing arguments: (1) he contends that the trial court improperly limited the scope of his closing; and (2) he alleges prosecutorial misconduct. We do not address the first of these assignments of error, as it is based on a mischaracterization of the record and of the trial court's rulings. We address Staten's prosecutorial misconduct allegations only briefly, because we are convinced that any misconduct that occurred was harmless.

■ Staten's first prosecutorial misconduct contention is that in rebuttal, the prosecutor improperly argued facts not in evidence. *See generally State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). We agree with Staten's contention. However, prosecutorial misconduct does not require reversal unless there is a substantial likelihood the misconduct affected the verdict. *State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S.

995 (1986). The strength of the State's evidence, coupled with Staten's timely objection to the prosecutor's improper argument, convinces us that there is no substantial likelihood the improper argument affected the verdict.

Staten's second misconduct contention is that the prosecutor shifted the burden of proof to him by arguing in rebuttal that defense could have called a missing witness. We do not need to address the issue as the strength of the evidence against Staten again convinces us that if error occurred, it was harmless beyond a reasonable doubt. *See generally State v. Cleveland,* 58 Wn. App. 634, 648, 794 P.2d 546 (using constitutional harmless error standard in evaluating effect of prosecutor's burden shifting argument), *review denied,* 115 Wn.2d 1029 (1990).

The judgment and sentence are affirmed.

GROSSE, C.J., and COLEMAN, J., concur.

Review by Supreme Court pending July 1, 1991.