FILED
COURT OF APPEALS
DIVISION II

2013 JUN -4 AM 8:56

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

OLUJIMI AWBAH BLAKENEY,

Appellant.

No. 42427-4-II

UNPUBLISHED OPINION

JOHANSON, J. — During a physical altercation in a Tacoma neighborhood, Olujimi Awbah Blakeney threatened a woman with a gun. When leaving the altercation scene, Blakeney fired multiple shots from a moving vehicle, killing a bystander. A jury convicted Blakeney of first degree murder, drive-by shooting, first degree unlawful firearm possession, and second degree assault. He appeals his conviction and sentence, claiming (1) prosecutorial misconduct relating to vouching for a witness's credibility, (2) public trial and open records violations regarding sealed juror questionnaires, (3) an evidentiary error, (4) a trial court error in ruling that the first degree murder and drive-by-shooting offenses were not the same criminal conduct, (5) an improper jury instruction, and (6) ineffective assistance of counsel. Of the issues preserved for appeal, Blakeney demonstrates no reversible error, and we affirm.

## FACTS

On a July 2010 evening, Blakeney was with Manuel Castillo, Herman Jackson, and Castillo's fiancée and mother of his child, Christina Roushey. That night, Blakeney, an African American, wore a black hooded sweatshirt; Castillo, a light-skinned Native American, wore a red shirt. Roushey received text messages from acquaintance Jordan Kudla that led Castillo to

believe that Kudla was threatening Roushey and their daughter. In response, Castillo wanted to fight Kudla.

Jackson drove Blakeney and Castillo to Kudla's neighborhood, and Jackson stayed with the vehicle while Castillo went to fight. Blakeney remained seated in the front passenger seat. Castillo and Kudla began wrestling and their fight caused a neighborhood commotion, leading Kudla's mother, April Kudla, and others to come outside.

April Kudla approached the fight with a baseball bat to break it up, but Blakeney confronted her and asked if she planned to hit his "little homie with that bat." 5 Verbatim Report of Proceedings (VRP) at 378. Blakeney pointed a gun at her, and then raised it skyward, firing two shots.

After firing, Blakeney ran to the front passenger side of Jackson's car. April Kudla hit both Jordan Kudla and Castillo with the bat until they released one another; then Castillo ran to the rear driver's side of Jackson's car.

Seconds after Jackson, Castillo, and Blakeney returned to the car and Jackson pulled the car away, shots were fired from the vehicle's passenger side. One of these shots fatally struck Lisa Melancon, a neighborhood resident, killing her almost instantly. Witnesses identified the shooter as Blakeney, or someone matching Blakeney's description. Castillo and April Kudla both testified that Blakeney fired the fatal shots. Jordan Kudla, Amie Hieronymus, Austin Frederick, and Joe Melancon all witnessed the shots being fired by someone wearing a black top, consistent with the black hoody that Blakeney wore that night. Jackson also testified that he heard Blakeney fire the shots from the car's passenger side.

After the shooting, Blakeney moved to California. He told his roommates that he had shot and killed someone in Washington and that he had disposed of the gun in a Washington river.

The State charged Blakeney with first degree murder by extreme indifference to human life,[1] drive-by shooting,[2] first degree unlawful firearm possession,[3] and second degree assault.[4] The State reduced Castillo and Jackson's charges in exchange for their testimony at Blakeney's trial.

Before trial, Blakeney moved to compel discovery of the jail phone recordings of his codefendant witnesses, Castillo and Jackson. Blakeney believed these recordings were material because during the conversations, Jackson and Castillo spoke with family members about their plea agreements. The trial court denied the motion to compel, explaining that Blakeney failed to make a sufficient showing of materiality to justify the production of these recorded conversations.

Also, the parties agreed to present the jury venire with questionnaires, believing the questionnaires may aid in jury selection. The parties then used these questionnaires to individually question certain venire members in open court, outside the presence of other potential jurors.

---

[1] RCW 9A.32.030(1)(b).

[2] RCW 9A.36.045(1).

[3] Former RCW 9.41.040(1)(a), LAWS OF 2009, ch. 293, § 1. Former RCW 9.41.010(16), LAWS OF 2009, ch. 216, § 1.

[4] Former RCW 9A.36.021, LAWS OF 2009, ch.; former RCW 9.41.010.

At trial, witnesses testified that after the shooting, Blakeney moved to California. He told one of his roommates, Ron Nocera, about the events surrounding the shooting; and, Blakeney admitted that he had shot in Melancon's direction as the car pulled away. Another roommate, Alijah Nocera, testified that Blakeney told him that he had shot the victim and then disposed of the gun near a river. Finally, a third roommate, Mark Smith, testified that Blakeney confessed that he had shot from a car and killed someone before throwing the gun in a river. 3 VRP at 78.

Blakeney cross-examined Castillo and asked if Castillo's plea agreement required him to submit to polygraph examinations if the State requested. He responded affirmatively. Blakeney then asked whether Castillo had undergone any polygraphs, and Castillo responded negatively. In rebuttal, the State called Castillo's attorney, Michael Schwartz, to testify that the polygraph provision was an investigatory tool and an incentive to the defendant to refrain from "untruthfulness," and also that polygraph results are inadmissible at trial. 5 VRP at 440. Before Schwartz testified, the trial court read the jury a limiting instruction detailing the scientific dispute over polygraph reliability, and the instruction explained that polygraphs are not generally admissible in court; but, the instruction noted that the State commonly uses polygraphs as investigative tools. Finally, the trial court instructed the jury that it "may consider its use or nonuse here in evaluating the investigation conducted in this case. You may not use the polygraph testimony for any other purpose." 5 VRP at 437. As part of the final instructions, the trial court gave instruction 15, defining "reckless." Clerk's Papers (CP) at 99. Blakeney did not object to this instruction.

On July 20, 2011, the jury convicted Blakeney on all counts. At an August 3 sentencing hearing, Blakeney argued that his first degree murder and drive-by-shooting convictions constituted same criminal conduct for sentencing purposes. The trial court disagreed.

On September 23, the trial court filed the juror questionnaires under seal in open court.[5] Blakeney appeals his conviction and sentence.

## ANALYSIS

### I. VOUCHING FOR A WITNESS

Blakeney argues that the State committed misconduct when it vouched for Castillo's credibility by eliciting testimony regarding the polygraph provision in Castillo's plea agreement. We reject this argument because, even if there was error, it was harmless.

To prevail on a prosecutorial misconduct claim, the defendant bears the burden of showing that the comments were improper and prejudicial. *State v. Ish*, 170 Wn.2d 189, 195, 241 P.3d 389 (2010). In order to prove prejudice, the defendant must show there is a substantial likelihood the misconduct affected the jury's verdict. *Ish*, 170 Wn.2d at 200.

Assuming, without deciding, that Blakeney could show improper vouching, his claim still fails because he cannot show prejudice. The allegedly improper testimony allowed the jury to hear rebuttal testimony that polygraphs are inadmissible at trial and that they are used as investigative tools. The jury was also given a limiting instruction. We weigh any resulting prejudice against the overwhelming evidence of guilt the State presented.

---

[5] The record contains no transcript record or September 23 court order sealing these documents. But the parties agree that the trial court sealed these questionnaires on September 23, 2011.

Here, multiple witnesses identified Blakeney—or someone matching Blakeney's description—as the shooter. In addition to Castillo, April Kudla testified that Blakeney fired the fatal shots. Jordan Kudla, Hieronymus, Frederick, and Joe Melancon all witnessed the shots being fired by someone wearing a black top, consistent with Blakeney's black hoody. Jackson also testified that he heard Blakeney fire the shots from the car's passenger side. Finally, Blakeney's three California roommates testified that Blakeney confessed to shooting from the car and killing Melancon.

In light of this overwhelming evidence, Blakeney fails to demonstrate any prejudice from the alleged improper vouching. Thus, any error would have been harmless.

## II. SEALING JUROR QUESTIONNAIRES

Blakeney next argues that the trial court erred when it violated his public trial rights and the public's right to open court records by sealing jury questionnaires without a hearing. Blakeney fails to demonstrate any reversible error regarding either his right or the public's right to an open trial and records.

When a trial court allows parties to use juror questionnaires as a screening tool during oral voir dire in open court, it need not perform a *Bone-Club*[6] analysis before later sealing those questionnaires because the sealing does not constitute a courtroom closure implicating the defendant's public trial rights. *State v. Beskurt*, 176 Wn.2d 441, 447, 293 P.3d 1159 (2013). Likewise where, as here, an appellant seeks a new trial to remedy an alleged violation of the public's article I, section 10 rights to open records—without also demonstrating an article I, section 22 violation—the alleged error does not warrant a retrial. *Beskurt*, 176 Wn.2d at 446.

---

[6] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

### III. Alleged Denial of Exculpatory Evidence

Blakeney next claims that the trial court erred in denying his CrR 4.7(d) motion to compel the State to obtain the jail phone recordings of Jackson and Castillo because those recordings may have been exculpatory. The trial court did not abuse its discretion.

We review a trial court's denial of a motion to compel discovery for abuse of discretion. *State v. Norby*, 122 Wn.2d 258, 268, 858 P.2d 210 (1993). A trial court abuses its discretion when it decides a matter on untenable grounds or reasons. *State v. Lusby*, 105 Wn. App. 257, 262, 18 P.3d 625, *review denied*, 144 Wn.2d 1005 (2001).

RCW 70.48.100(2) requires that the records of a person confined in jail "shall be held in confidence and shall be made available" for court proceedings "upon the written order of the court in which the proceedings are conducted." CrR 4.7 is a reciprocal discovery rule that separately lists the parties' obligations when engaging in discovery. *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). CrR 4.7(d) provides that when a defendant requests materials that a prosecutor cannot obtain, if those materials are subject to a court's jurisdiction, a court shall issue a subpoena or order to make that material available to the defendant.

But a defendant's right to disclosure relates only to favorable evidence that is material to guilt or punishment. *Blackwell*, 120 Wn.2d at 828. A defendant must demonstrate that the requested discovery is material to the defense preparation. *Blackwell*, 120 Wn.2d at 828. The mere possibility that undisclosed evidence might have helped the defense or might have affected the trial outcome does not establish materiality. *Blackwell*, 120 Wn.2d at 828.

Blakeney cannot demonstrate that the trial court abused its discretion in denying his motion to compel because he did not show that the recordings were material to his defense.

Under CrR 4.7, the State sought the recordings on Blakeney's behalf; and, the sheriff denied the request, advising Blakeney that it would only release them by court order, citing state law and *Blackwell*. Following state statute, Blakeney filed his motion to compel, in which he submitted his attorney's declaration that described interviewing Castillo and Jackson. The declaration stated that Jackson had discussed his plea agreement with his mother and wife. Castillo said, "I told my mom about [the plea agreement], my mom and my grandma." CP at 43. Here, the parties and trial court followed the procedures outlined under RCW 70.48.100(2), CrR 4.7, and *Blackwell*. The trial court, following *Blackwell*, denied Blakeney's motion to compel because Blakeney only showed that Jackson and Castillo mentioned the plea agreements' existence; he failed to adequately show materiality. Because Blakeney only showed that Jackson and Castillo mentioned the plea agreements' existence and nothing more, he does not demonstrate that the trial court acted on unreasonable grounds or for untenable reasons in finding that the recordings lacked the requisite materiality under *Blackwell*. Therefore, Blakeney cannot show that the trial court abused its discretion. *See Lusby*, 105 Wn. App. at 262.

## IV. SAME CRIMINAL CONDUCT

Next, Blakeney argues that the trial court erred in finding that first degree murder by extreme indifference and drive-by shooting did not encompass the same criminal conduct. Blakeney is incorrect.

We review factual determinations of same criminal conduct for an abuse of discretion. *State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994). Same criminal conduct is two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. RCW 9.94A.589(1)(a).

Here, the trial court considered whether the murder and drive-by shooting charges constituted same criminal conduct. The trial court found that the two charges required different criminal intent and had different victims. The trial court is correct and therefore did not abuse its discretion because the crimes require different criminal intent and had different victims. For first degree murder, the State had to prove extreme indifference to human life, whereas the drive-by shooting required proof of recklessly discharging a firearm. *Compare* RCW 9A.32.030(1)(b) with RCW 9A.36.045. Moreover, Lisa Melancon was the victim of the first degree murder, while the public was the victim of the drive-by shooting. *See State v. Rodgers*, 146 Wn.2d 55, 62, 43 P.3d 1 (2002) (noting that the victim of a drive-by shooting is the public). Accordingly, the trial court did not abuse its discretion in finding that the first degree murder and drive-by shooting offenses did not constitute same criminal conduct.

## V. JURY INSTRUCTION

Blakeney next claims that the trial court improperly instructed the jury with instruction 15, regarding the "reckless" standard. Blakeney, however, failed to preserve this issue for appeal.

Any objections to jury instructions must be put in the record to preserve review. *State v. Sublett*, 176 Wn.2d 58, 75-76, 292 P.3d 715 (2012). Because Blakeney did not object to instruction 15 at trial, he did not preserve this issue for review. He also fails to identify any specific constitutional interest affected by the alleged jury instruction error; therefore, he does not provide an avenue for RAP 2.5(a) to apply (providing an appellant the opportunity to challenge an issue for the first time on appeal when the issue raises a manifest error affecting a constitutional right).

VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Blakeney argues that defense counsel provided ineffective assistance when he agreed to instruction 15, allegedly a misstatement of law. Blakeney does not demonstrate a deficient performance, so his claim fails.

To succeed on an ineffective assistance of counsel claim, the defendant must show that counsel's conduct was deficient; and the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel is presumed to have acted competently unless shown otherwise. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). In order to show prejudice, the defendant must demonstrate that it is reasonably probable that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If the ineffective assistance claim fails on one prong, "the court need not address the other prong." *State v. Staten*, 60 Wn. App. 163, 171, 802 P.2d 1384, *review denied*, 117 Wn.2d 1011 (1991).

At the outset, we must determine whether defense counsel's failure to object to instruction 15 constituted deficient performance. Blakeney asserts that defense counsel should not have agreed to instruction 15, which instructed the jury on the "reckless" standard applied under our drive-by shooting law. Blakeney cites the Washington Pattern Jury Instructions:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a [wrongful act] [(fill in more particular description of act, if applicable)] may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.03, at 209 (3d ed. 2008) (WPIC). The note after this instruction states, "Use bracketed material as applicable." WPIC 10.03, at 209.

Instruction 15 used the WPIC's exact language, including the language from the first set of brackets, but it omitted the second set of brackets. Blakeney argues that defense counsel should have asked that the instruction include language in the second set of brackets; he believes that the instruction should have stated that a reckless act disregards a substantial risk that death or serious physical injury would occur. Blakeney argues that this version more accurately states the law.

Blakeney, however, fails to recognize that instruction 15 merely defined "reckless." The to-convict instruction, instruction 23, mirrored the drive-by shooting statute, RCW 9A.36.045(1),[7] explaining that to convict Blakeney of drive-by shooting, the jury had to find that Blakeney recklessly discharged a firearm from a motor vehicle, creating a substantial risk of death or serious physical injury to another. Accordingly, Blakeney's version of instruction 15 would have added language redundant to that already included in instruction 23. Defense counsel did not need to pursue this version of the instruction because its language was already included elsewhere in the jury instructions. As defense counsel acted reasonably, Blakeney cannot demonstrate deficient performance and his ineffective assistance claim fails. *See Strickland*, 466 U.S. at 694.

---

[7] The State must prove that the defendant recklessly discharged a firearm in a manner that creates substantial risk of death or serious physical injury to another, and the discharge is from a motor vehicle. *See* RCW 9A.36.045(1).

Even if Blakeney could demonstrate deficient performance, as with his improper vouching claim, he cannot show how the deficient performance prejudiced him. Multiple eyewitnesses testified that Blakeney, or the only person in Jackson's car matching Blakeney's description, fired shots from a passenger window toward a group of people as the car departed. Moreover, Blakeney's California roommates testified that Blakeney confessed to shooting from the car and killing Melancon. Accordingly, Blakeney does not show that, but for counsel's allegedly deficient performance, the jury would not have convicted him of drive-by shooting. Accordingly, his ineffective assistance argument fails. *See Strickland*, 466 U.S. at 694.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, J.

We concur:

Penoyar, J.

Worswick, C.J.