

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71907-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| JESSE JESUS SOTO, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 16, 2015 |
| | ) | |

LAU, J. — Jesse Soto appeals his convictions for one count of first degree unlawful possession of a firearm and one count of possession of methamphetamine. He challenges the trial court's denial of his requests to "fire" his court-appointed attorney, claiming the denial violated his right to counsel under the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution. We conclude Soto provided no legally sufficient basis to support appointment of substitute counsel and his pro se statement of additional grounds presented no meritorious claim, we affirm.

## FACTS

On January 14, 2012, Jesse Soto was arrested for attempted burglary. In a search incident to arrest, police recovered a baggie containing a substance later identified as methamphetamine. The police also discovered a nine-millimeter semiautomatic pistol nearby. The Washington State Patrol Crime Laboratory tested the handgun for deoxyribonucleic acid (DNA). The DNA recovered from the handgun matched Soto's DNA.

On December 26, 2012, the State filed an information charging Soto with first degree unlawful possession of a firearm and possession of methamphetamine.

On January 3, 2013, Soto's court-appointed attorney filed a notice of appearance.

On January 7, 2013, Soto was arraigned.

On March 5, 2013, the trial court entered an order setting an omnibus hearing for April 5 and setting trial for April 24. Defense counsel moved to continue omnibus and trial several times to complete defense investigation, consult with a possible defense expert witness, conduct witness interviews, and to accommodate his trial schedule.

While awaiting trial, Soto moved three times to "fire" his attorney and substitute a new attorney. The trial court denied each request. He appeals.

### First Motion

At an omnibus hearing on September 6, 2013, and 12 days before trial, Soto moved to discharge his attorney. On September 12, Soto told the court he wanted a new court-appointed attorney because he was unhappy about pleading guilty in a prior

case while represented by defense counsel. He made no complaints about defense counsel's legal representation on his current case.

> MR. SOTO: Um, I would like to fire my attorney because that's why we're here. He's my attorney and I went—and I went to prison on similar charges and he told me to wait without telling me that I couldn't come to trial.
> Instead, he let me take a deal on my waive—to DOC. So I would like to fire my attorney because I have reason, because he told me in a way without telling me that I could have gone to trial on similar charges, and he let me take a deal. I was on my way to DOC, and so I would like to fire my attorney for that reason.
>
> THE COURT: And who do you plan on hiring?
>
> MR. SOTO: Um, well, I will—I have—I will hope that the State would, um, provide me with a new attorney. I think that would be—that would—I think that would—If I get a new attorney, hopefully.
>
> THE COURT: Okay. Um, let me, um, inform you that you do have a right to have counsel, there's no question there, but you do not have the right to choose the attorney that you wish to have. You're certainly free to hire one, so don't misunderstand me, but based on the information you've provided to the Court, that is an insufficient basis to grant you a new attorney, so your request is denied.

Report of Proceedings (RP) (Sept. 12, 2013) at 4-5.

The trial court denied Soto's motion, explaining that Soto could hire his own attorney but he was not entitled to pick his court-appointed attorney.

After denying Soto's motion, defense counsel moved for a trial continuance over Soto's objection. Defense counsel told the court he had been consulting with a DNA expert over the main evidence on the weapon charge. More time was necessary to complete the expert report and to prepare an effective defense. The court granted the trial continuance.

Second Motion

On November 21, 2013, the day before the omnibus hearing,[1] Soto moved to discharge defense counsel and sought appointment of new counsel. Soto explained communication difficulties, trial date delay and failure to receive discovery as the main reasons. He never mentioned unhappiness with the handling of his prior case.

> MR. SOTO: I would like to fire my attorney because I have conflicts with him. I can't get ahold of him. I call him. I leave voice mail. There's no—there's no way I—I got—I barely got ahold of him. I've been—but I've been calling him so many times, and I finally got—and he has not come up with my—I ask him for things and I haven't gotten a response for it. Like my discovery, I haven't gotten the rest of my discovery, or all my paperwork for my—for my—for my courts. I haven't got all that. And also every time we go to court—
>
> THE COURT: uh-huh.
>
> MR. SOTO: —my trial gets keep continuing. He's through on the same subject for months, and I've been already here and—and I don't see why it's taking—it's just taking him so long to come with that information that he needs.
> . . . .
> So those are the reasons why I would want to fire my attorney, because I'm not seeing any help, any progress, anything move, that he has to go with or information. He just barely came and see me. I even call him, leaving voice mails, and I barely got ahold of him.

RP (Nov. 21, 2013) at 4.

The trial court questioned Soto about when he made the calls to defense counsel. Soto claimed he called during business hours and assumed that defense counsel was in his office when he called. The court asked defense counsel to explain the delay. Defense counsel said he was in trial for over a month and "playing a little bit of catch-up in terms of communicating with clients who have been trying to get ahold of

---

[1] The trial date was December 4.

me during that period of time. Mr. Soto is right, his case has been pending for a long time. . ."[2] Defense counsel explained unique DNA issues and the resumption of another trial on December 2 caused delay. He said he told Soto about this trial conflict and a request for trial continuance at omnibus. Defense counsel also explained to Soto that substitution of new counsel would delay the trial.

> [A]nd much of that time has related to the defense working with a potential DNA expert to address the primary evidence against him on his unlawful possession of a firearm charge. . . . and there have been some unusual issues that have come up during that process which has delayed progress on this case. I've also discussed with him the fact that I'm in recess right now and expected to resume another trial on December 2nd, and it's likely that, at the omnibus hearing tomorrow, I would be asking to move his trial date. We've also discussed the fact that if the court were to grant his motion, that it's likely that another attorney stepping into the case would want time to become familiar with the case and that that would likely further delay being able to get his case out to trial.

RP (Nov. 21, 2013) at 7.

The trial court questioned the State about issues with the DNA testing. The State confirmed the DNA issues related to contamination of the sample by a lab technician's own DNA caused the delay.

The court asked, "So fair to say that takes some time?" RP (Nov. 21, 2013) at 8. The State said "[y]es." RP (Nov. 21, 2013) at 8. Soto said he understood that there were issues but reiterated his compliant, stating "it's been—I've been waiting for a year, and I don't think it should take that long to get that information handled and find out what's going on." RP (Nov. 21, 2013) at 8. The court denied Soto's request, explaining:

---

[2] Defense counsel said, "the last couple months I have been pretty busy since I was in trial from September 30th . . . through the first full week of November. . . ." RP (Nov. 21, 2013) at 6.

Okay. Well, certainly I understand that you're frustrated. Um, I'm going to deny your request, because, number one, supposedly we have a trial date just a couple of weeks down the road. Your attorney is correct when he informs you that if this Court were to grant your request, it's going to take another attorney possibly just as long.

You need to remember that your attorney, as well as most of the attorneys here, um, have many other cases that they have to deal with, many other people and faces behind those cases, and as your attorney just noted, he's in trial, and it's not surprising that he can't try several cases at one time. So, he can only do one trial at a time which explains certainly why you have not been able to get to him during those hours that you just described, because during those hours he's in a courtroom with another case, another client, and another judge.

. . . You certainly, and I'm sure I told you this when you were in front of me before, have a right to an attorney. You don't have a right to select the attorney that you want. You certainly have the right to hire counsel, um, and that's something that I'm not sure I would suggest that you do because, again, private or not, it's still going to take time to be able to prepare the case. So I'm going to find that you've not given this Court a legal basis for counsel—for new counsel, recognizing that there's some frustration here because things take time, I understand that, and I am denying your request. And that will conclude this matter.

RP (Nov. 21, 2013) at 8-9;

Omnibus was rescheduled for December 20 and trial for January 8, 2014. Several defense continuances were granted due to ongoing issues with defense expert consultation.

### Third Motion

At omnibus on February 3, 2014, and two days before trial, Soto moved a third time to discharge his attorney. Defense counsel explained that Soto wanted to go to trial as quickly as possible, but the defense expert's review of the State's DNA testing caused delays. He also reiterated that the main trial delay was due to the accidental deposit of a crime lab employee's DNA on the firearm which caused additional

investigation and preparation. He said the DNA evidence was "significant" evidence. He also advised the court that the defense expert's report might be ready "hopefully by the end of this week or . . . next week." RP (Feb. 3, 2014) at 4. As soon as it was ready, he said he would provide it to the State. Defense counsel requested a brief trial continuance to later in February. He also indicated that the State needed a short continuance also due to witness unavailability. Finally, he reassured the court of his readiness for trial "very quickly" unless the court granted Soto's motion.

Soto repeated his concern about the trial delay and "lack of help" from his attorney as reasons for his motion.

> I would like to make a motion to fire my attorney for his lack of help. Um, I call him and can't get ahold of him. Last time he was here, we went through the same thing. I understand he has other people he's working on, I'm not the only person, but I don't think you should take 13 months to get the evidence that he needs. And every time we go to court, he comes and tells the court the same thing and I haven't seen no progress. I keep hearing the same thing that comes out of my attorney's—I don't see anything different, you know, or anything that—that shows that—we should have been already in trial.

RP (Feb. 3, 2014) at 5.

The court questioned the State over when the DNA testing took place and the cause for the delay. The State repeated that unexpected discovery of DNA sample contamination caused additional setbacks. The State and defense counsel said that they had reached agreement on the terms of a protective order for the crime lab technician's DNA in September. The State said that defense counsel continued to consult with the defense expert and, "in the last couple of weeks," provided a summary to the State. RP (Feb. 3, 2014) at 8. The State requested a copy of the defense expert

report and an interview of the expert. The State also outlined the unavailability for trial of several officers and its expert witness.

The court explained to Soto that the delay did not mean his attorney was not working on the case. It denied Soto's request:

> THE COURT: All right. That's a lot of work. That's a lot of work. Just because he's not staying in touch with you on a regular basis doesn't mean he is not preparing for your case. Do you understand that?
> . . . .
> MR. SOTO: I do understand, but things—maybe they were doing their job. Maybe. I mean, I'm not nobody that can tell them how to do their job, but I think it—if they were maybe—maybe doing something, it wouldn't, like, take that long.
>
> THE COURT: Well, someday you might want to find yourself a DNA expert and find out if that's true or not, but I think probably they know better. So I'm not hearing any legal basis for you to ask this Court to fire your lawyer. What I'm hearing is, yes, you're in custody. No, that's not fun, I understand it, and you've been there for a long time, and it doesn't feel fair. I get that. But that's not a reason to have your attorney fired. If this Court were to grant your request, and, again, you have not provided me any legal basis, you might as well times that by two because you'd have a brand new lawyer who wouldn't have a clue what's going on and would have to start all over again where your attorney has already been in order to understand what the evidence is.
>
> So I appreciate the frustration. I get that. And I'm sorry, but this is not a legal basis for a new lawyer. You don't really want a new lawyer, I assure you of that, but it is not a legal basis for a new attorney. So I'm going to deny your request. I understand this is over your objection. Based on the information that I've heard, the law allows me to do so. . .

RP (February 3, 2014) at 9-11.

Trial commenced on February 27. The jury convicted Soto as charged.

Soto appeals.

ANALYSIS

Soto argues that the trial court's denial of his motions to discharge his attorney and appoint substitute counsel violated his right to counsel under the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution.

The Sixth Amendment guarantees "an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). But where the "relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates [the defendant's] Sixth Amendment right to effective assistance of counsel." United States v. Moore, 159 F.3d 1154, 1158 (9th Cir. 1998).

A criminal defendant must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and defendant. State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). A conflict in the attorney-client relationship requires substitution where "counsel and defendant are so at odds as to prevent presentation of an adequate defense." State v. Stenson, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997). An irreconcilable conflict sufficient to justify the substitution of counsel "occurs when the breakdown of the relationship results in a complete denial of counsel." State v. Schaller, 143 Wn. App. 258, 268, 177 P.3d 1139 (2007). Yet "[t]he general loss of confidence or trust alone is not sufficient to substitute new counsel." Stenson, 132 Wn.2d at 734. Nor is a defendant's "general dissatisfaction and distrust" with counsel's

performance enough to compel substitution of counsel. Varga, 151 Wn.2d at 200-01.

In other words, the Sixth Amendment does not guarantee a "meaningful relationship"

between the defendant and his attorney. Morris v. Slappy, 461 U.S. 1, 13-14, 103 S. Ct.

1610, 75 L. Ed. 2d 610 (1983).

We consider three factors in determining whether an attorney-client conflict

warrants new counsel: (1) the extent of the conflict, (2) the adequacy of the trial court's

inquiry into the conflict, and (3) the timeliness of the motion to substitute counsel. In re

Pers. Rest. of Stenson, 142 Wn.2d 710, 724, 16 P.3d 1 (2001) (citing United States v.

Moore, 159 F.3d 1154, 1158-61 (9th Cir. 1998). We review a trial court's denial of a

defendant's motion for new counsel for an abuse of discretion. Varga, 151 Wn.2d at

200. A court abuses its discretion when its decision adopts a view no reasonable

person would take or is based on untenable grounds or untenable reasons. State v.

Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

Conflict

Soto argues the trial court erred in denying his request for new counsel because

he "completely lost trust in his attorney" due to an irreconcilable conflict and a

breakdown in communication. Br. of Appellant at 11. We disagree. Nothing in the

record supports this assertion.

In Soto's first motion for new counsel, he made a vague assertion that he was

unhappy with some aspect of defense counsel's representation on a prior case. The

record shows he never complained about defense counsel's representation in this case.

Soto claims he told the court "he believed that when [his attorney] previously

represented him, [his attorney] had withheld critical information about his case, which

-10-

ultimately caused Mr. Soto to enter a plea of guilty rather than exercise his right to a trial." Br. of Appellant at 11.

A fair reading of Soto's actual remarks quoted above do not support this interpretation of what Soto purportedly said to the trial court. Even a generous construction of his comments do not point to an irreconcilable conflict, or breakdown in communication between Soto and defense counsel. We also note that Soto made this motion just 12 days before trial and 9 months after defense counsel began representing him in this case. Soto identifies no material fact "that would have been elicited had the court inquired further." State v. Sinclair, 46 Wn. App. 433, 436, 730 P.2d 742 (1986).

As to his second and third motions, quoted above, Soto never revealed to the trial court any facts demonstrating a conflict of interest, irreconcilable conflict or complete breakdown in communication between himself and his defense counsel. At most, he complained mainly about trial delay, nonreceipt of some discovery, not always returning calls promptly, and not visiting him at the jail enough. In his final motion, he complained only about trial delay and the slow pace of discovery. Although counsel's inaccessibility may constitute a legitimate grievance, "it is not one that requires a trial judge to grant a motion to substitute." State v. Staten, 60 Wn. App. 163, 170 n.7, 802 P.2d 1384 (1991).

Quoting Daniels v. Woodford, 428 F.3d 1181, 1198 (9th Cir. 2005), Soto claims that "[w]here a criminal defendant has, with legitimate reason, completely lost trust in his attorney, and the trial court refuses to remove the attorney, the defendant is constructively denied counsel." The citation is inapposite. The problem with this argument is Soto established no factual predicate demonstrating a loss of trust to justify

-11-

substitution of counsel. In any event, a general loss of trust or confidence does not justify substitution of counsel, as noted above.

Further, Soto does not complain that his attorney was ineffective at trial. Although in some cases courts have found a complete breakdown in communication despite competent representation, they do so "only in extreme cases." Stenson v. Lambert, 504 F.3d 873, 887 (9th Cir. 2007). Instead, the rule is that "'[i]f the representation is adequate, prejudice must be shown.'" State v. Thompson, 169 Wn. App. 436, 458, 290 P.3d 996 (2012) (quoting Schaller, 143 Wn. App at 270). Soto has not argued that he was prejudiced by any claimed conflict at trial.

Adequacy of Inquiry

Soto contends the trial court failed to conduct an adequate inquiry on his first motion to discharge counsel. Relying on Daniels v. Woodford, 428 F.3d 1181, 1200 (9th Cir. 2005), Soto argues that after making his motion, the court must question him "privately and in depth" and to inquire of any available witnesses. He also relies on language stating that "in most circumstances a court can only ascertain the extent of a breakdown in communication by asking specific and targeted questions." United States v. Adelzo-Gonzalez, 268 F.3d 772, 777-78 (9th Cir. 2001).

Daniels and Adelzo-Gonzalez are factually distinguishable. Daniels, for instance, was a death penalty case involving a long history of conflicts between the defendant and appointed counsel. Before trial, Daniels sent the court a letter expressing his distrust of his attorneys, his belief that they were ineffective, and his concern that they were conspiring with the prosecution. The court disregarded Daniels' concerns. Further, the complete breakdown in communication between Daniels and his attorney

-12-

meant they were "unable to discuss possible defense strategies . . . or to discover and assess basic information about the case from his perspective. . . ." Daniels, 428 F.3d at 1199-200. The court wrote that "[w]here a criminal defendant has, with legitimate reason, completely lost trust in his attorney, and the trial court refuses to remove the attorney, the defendant is constructively denied counsel." Daniels, 428 F.3d at 1198 (emphasis added).

Likewise, in Adelzo-Gonzalez, the defendant claimed his attorney used profanity, threatened to get him imprisoned for 105 years if he rejected a plea deal, and openly accused his client of being coached and lying in court. Adelzo-Gonzalez, 268 F.3d at 774-76. The trial court made no inquiry before denying the defendant's first and third motions. The Ninth Circuit reversed, finding the inquiries inadequate. The court found compelling reasons for the trial court to "delve deeper" into the defendant's relationship with his attorney given "such striking signs of conflict." Adelzo-Gonzalez, 268 F.3d at 778.

Daniels and Adelzo-Gonzalez are unpersuasive.[3] Unlike this case, those cases involved egregious breakdowns in the attorney-client relationship. A brief trial court inquiry is not dispositive. Soto provided the necessary information for the trial court to accurately determine whether substitute counsel was constitutionally required. Washington courts hold that "[f]ormal inquiry is not always essential where the defendant otherwise states his reasons for dissatisfaction on the record." Schaller, 143

---

[3] Further, we note that although federal decisions are entitled to great weight, they "are not binding upon the Washington State Supreme Court or this court." Feis v. King County Sheriff's Dept., 165 Wn. App. 525, 547, 267 P.3d 1022 (2011). Instead, we are bound by the decisions of the Washington Supreme Court and the United States Supreme Court.

Wn. App. at 271; Varga, 151 Wn.2d at 200-01 (trial court that afforded defendant the opportunity to explain reason for dissatisfaction with his attorney did not abuse its discretion). A trial court performs an adequate inquiry by allowing the defendant to express his or her concerns fully. Schaller, 143 Wn. App. at 271.

For each of Soto's motions, the trial court allowed Soto to fully express the nature of his dissatisfaction with his court-appointed attorney.

Timeliness of Motion

Soto claims each of his motions were timely.

The timeliness of Soto's motion is irrelevant because he failed to establish any conflict between himself and defense counsel and the court's inquiry was adequate.

CONCLUSION[4]

---

[4] Soto also files a statement of additional grounds for review. He claims:
It was not fair that the prosecuqtor get to go first in trial and get's to speak last in trial by last get the last word. It was not fair words getting throw out that the Jurey is not to be hearing. They still heard them anyways that was not fair. It was not fair when I ask for new attorney 3 times I didn't get one. It was not fair that the prosecution gets to bring my history up in trial and by history say's that I been convicted of violent crime.

This claim fails. Beyond allegations of fairness, Soto provides no legal principle that would allow us to review his claim. We also address Soto's complaint about his motion for substitute counsel above.
Soto also claims:
It was not fair of the Jurey rule's that my history get to bring up that if I been convect of violet crime. It was not fair police were to get my DNA when they said they have it. It was not fair that the court let them. It was not fair that the sweat shirt or jackit it was not in trial if that the reason.

No legal principle provides a basis for relief. While Soto is not necessarily required to cite to the record or to legal authority, an appellate court will not consider an appellant's SAG if it does not inform the court of the nature and occurrence of the alleged errors. RAP 10.10(c); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

-14-

For the reasons discussed above, the trial court's denial of Soto's request to discharge his court-appointed attorney did not violate his constitutional right to counsel. We affirm the convictions.

WE CONCUR: