[No. 6216–0–II. Division Two. March 5, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
MICHAEL FOLKERTS, *Appellant.*

*Clifford R. Kuhn, George E. Twining,* and *Walker, Dowell, Hunter & Twining,* for appellant (appointed counsel for appeal).

*Henry R. Dunn, Prosecuting Attorney,* and *Randolph Furman, Deputy,* for respondent.

PETRICH, J.—John Folkerts appeals his conviction for robbery in the first degree entered on a jury verdict. He challenges the admission of in–court identification of him as one of the robbers and the admission of fingerprint evidence. He claims also that prosecutorial misconduct effectively denied him his right to compulsory process of a witness on his behalf as guaranteed by the sixth amendment to the federal constitution and article 1, section 22 of the state constitution. After a careful review of the record, we hold the court did not err in admitting the identification testimony and the fingerprint evidence, and that the claimed error of prosecutorial misconduct, if error at all, was harmless and affirm.

On September 29, 1981, two men entered the Medical Arts Apothecary in Longview and discussed the rental or purchase of wheelchairs with its owner. The next day the men returned, approached the area where rental equipment was displayed and examined the wheelchairs. The owner asked one of his employees to help them, because he was filling a prescription. One of the men took the employee to the checkout area and told her to stay there while his companion drew a revolver, entered the employee area of the pharmacy and forced the owner to put all the narcotics in a pillowcase. The two men fled the store and the revolver discharged on the way out. John Tomer pleaded guilty to the robbery. At Folkerts' trial, Tomer acknowledged that he was armed with a revolver and forced the owner to place the narcotics in a pillowcase. He identified Folkerts as his accomplice.[1]

---

[1]Tomer was a reluctant witness. He stated that he understood that part of his plea agreement provided that he would not be called to testify. After a hearing

On November 30, 1981, prior to trial, the county police conducted a lineup and Folkerts was identified by two of the women employees from the pharmacy. Folkerts' attorney was not notified, nor was he present at the lineup.

Folkerts moved to suppress the identification testimony of the two women employees. After a hearing, the trial court granted the motion in part: the women were allowed to testify in court as to Folkerts' identification, but evidence of his identity obtained as a result of the lineup procedure was excluded.

■ On appeal, Folkerts argues that under *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), the witnesses' recollections in court were tainted by the illegal lineup and should have been suppressed. He did not assign error to any of the trial court's findings of fact or conclusions of law following the suppression hearing. The trial court made detailed findings of fact concerning the witnesses' initial observation of Folkerts in the pharmacy and concluded that the witnesses each had an independent basis of identification based on certainty of identification, detailed descriptions, length of observation and absence of prior misidentifications. The trial court's conclusion is supported by the unchallenged findings, which are verities on appeal. *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981); *State v. Poirier,* 34 Wn. App. 839, 664 P.2d 7 (1983).[2] The trial court did not err in admitting the identification testimony. Folkerts' next challenge on appeal is to the trial court's admission of fingerprint evidence. After the robbery, one of the pharmacy employees noticed a paper

conducted in chambers, the court was satisfied that no such agreement had been made and he was thereafter required to submit to examination.

[2]Although the suppression hearing was held before trial, the formal findings and conclusions were dated and filed after Folkerts' appellant's brief was prepared and filed with this court. Folkerts did not supplement his appellant's brief with additional assignments. Nevertheless, we have independently examined the record of the suppression hearing and are satisfied the court's critical findings supporting its conclusions that each witness had an independent basis of identification, independent of any possible influence of the lineup, were correct.

sack on one of the wheelchairs in the rental equipment area and reported it to the police. The sack did not originate in the pharmacy. During discovery, the State told the defense it had a technician's report stating that Folkerts' fingerprints were on the sack, based on a comparison with his fingerprint card dated approximately 1977. At trial, the fingerprint technician was allowed to testify that the fingerprints on the bag matched Folkerts' fingerprints taken while he was in custody in 1982. Folkerts argues that the technician's testimony should have been suppressed because the State did not meet its ongoing obligation under CrR 4.7(h)(2) to disclose the new comparison.

 It is not clear, however, that further disclosure was necessary, because CrR 4.7(h)(2) requires ongoing disclosure of only *additional* material.[3] In this case, no new material of a substantive nature was discovered by the State because the technician's report disclosed to the defense during discovery revealed that Folkerts' fingerprints were on the bag in the store, as did the in–court fingerprint evidence. Moreover, as the State correctly pointed out in its brief, exclusion or suppression of undisclosed evidence under CrR 4.7 has been expressly rejected as a sanction for violation of the rule. *State v. Lewis,* 19 Wn. App. 35, 573 P.2d 1347 (1978); *State v. Stamm,* 16 Wn. App. 603, 559 P.2d 1 (1976), *review denied,* 91 Wn.2d 1013 (1977). There was no error in the admission of fingerprint evidence.

Finally, Folkerts claims that he was deprived of his con-stitutional right to compulsory process of a witness guaranteed by the Sixth Amendment and article 1, section 22 of the state constitution because of prosecutorial misconduct.

Near the close of the State's case, the court was apprised of the possibility that Roger Hubbs would claim his right against self–incrimination. Hubbs was then facing criminal

---

[3]CrR 4.7(h)(2) states in relevant part:

"If . . . a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material . . ."

charges in Seattle and had been removed from the King County Jail to the Cowlitz County Jail at the request of the defense. In order to avoid what the court considered as an improper inference if the claim were made before the jury, the court permitted defense counsel to inquire of Hubbs, in the absence of the jury, those matters he wished to develop at trial. *See State v. Nelson,* 72 Wn.2d 269, 432 P.2d 857 (1967). Other than admitting he had made incriminating statements to officials in Cowlitz County, Hubbs claimed his right against self–incrimination, refused to answer any questions relating to the robbery, and refused to answer any questions about his acquaintanceship with Tomer. Folkerts objected to the court's refusal to direct Hubbs to answer the questions as to why he chose to exercise his privilege against self–incrimination. He also objected to the court's refusal to permit questioning of the deputy prosecuting attorney about an interview of Hubbs by the deputy prosecuting attorney and a detective of the Longview Police Department that preceded Hubbs' assertion of his right against self–incrimination. Hubbs was returned to King County without appearing as a witness before the jury.

Claiming that his witness was silenced by threats and intimidation of the prosecutor resulting in a denial of his right to a fair trial, Folkerts moved for an order of immunity for Hubbs and that he be declared a material witness. This motion and the alternate motion for a mistrial were denied. Folkerts then instructed his attorney that no defense be presented on his behalf. By arrangement of defense counsel, four witnesses were present in court, ready and willing to testify on Folkerts' behalf. In accordance with the instructions, defense counsel did not offer any testimonial or documentary evidence and abstained from making any closing argument.

The defendant argues that the prosecutor interfered with his constitutionally protected right to compulsory process of witnesses on his behalf resulting in a denial of due process, citing the following: *State v. Burri,* 87 Wn.2d 175, 550 P.2d 507 (1976) (the right to counsel and right to compul-

sory process of witnesses are recognized as fundamental elements of due process of law which were violated by the State's use of a special inquiry proceeding to interrogate defendant's alibi witnesses and by imposing a cloak of secrecy on their testimony); *State v. Kearney*, 11 Wn. App. 394, 523 P.2d 443 (1974) (the right to compulsory process of witnesses was denied the defendant by the implication of bias in the minds of defendant's character witnesses when the prosecutor advised them that the defendant refused a lie detector test); *United States v. Lord*, 711 F.2d 887 (9th Cir. 1983) (the prosecutor's intimidation of a defense witness for the purpose of inducing the witness to assert the Fifth Amendment privilege against self–incrimination violated the defendant's right to due process).

After oral argument on this appeal, an order of remand was entered directing an evidentiary hearing to clarify: ". . . (1) what the prosecutor did or did not do with respect to inducing the allegedly favorable defense witness to claim the Fifth Amendment; (2) what influence, if any, the prosecutor had on the witness's decision not to testify."

The court's findings on the remand hearing established the following sequence of events. During an interview with defense counsel in the Cowlitz County Jail, Hubbs initially indicated that Folkerts was not involved in the robbery, but rather that he and Tomer committed it and that he was willing to so testify at Folkerts' trial. Immediately following the interview with defense counsel, a deputy prosecuting attorney, who had no intention of inquiring about the circumstances surrounding the pending robbery charges, interviewed Hubbs in the presence of a Longview police detective. The details of the robbery were not discussed in this later interview but the prosecutor advised Hubbs that if he testified he committed the robbery he would be prosecuted in that county, and if convicted, habitual criminal proceedings would likely follow resulting in an additional penalty. At Folkerts' trial, Hubbs' court appointed counsel, though lacking any "specific memory" of his conversations with Hubbs, was certain that he advised Hubbs of his Fifth

Amendment right.[4] Claiming his attorney–client privilege concerning conversations with his court appointed counsel, Hubbs refused to answer whether counsel advised him not to testify at Folkerts' trial. His stated reasons for refusing to testify included: (a) the prosecutor's threat of prosecution for robbery and subsequent habitual criminal proceedings if he implicated himself in the robbery; (b) his concern that his admissions would "get back to Seattle"; and (c) he was intimidated by the prosecutor. Finally, during the remand hearing and contrary to the advice from his then appointed counsel, Hubbs testified that he committed the robbery with Tomer and that Folkerts had no part in it.

Although the deputy prosecutor's conduct in this matter seems ill advised, we need not pass on whether there was a denial of Folkerts' constitutional rights. Such a decision is made only when it is absolutely necessary to the determination of the case. *State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981). Under the peculiar facts of this case we are satisfied that the error, even if it was of constitutional dimension, was harmless.

A denial of constitutional rights resulting in error is harmless when the reviewing court is satisfied that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). To determine whether constitutional error is harmless, we must employ the "overwhelming untainted evidence" test. *State v. Guloy,* 104 Wn.2d at 426. Under this test we look only at the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. We are satisfied after a careful review of this record that there is indeed overwhelming evidence of guilt.[5]

_____

[4]In another separate finding the court found that Mr. Hubbs' court appointed counsel "believed he advised Mr. Hubbs of his right not to testify."

[5]We recognize that there are situations in which constitutional error may never be harmless. *See State v. Guloy,* 104 Wn.2d at 431 (Brachtenbach, J., con-

Folkerts was positively identified as one of the robbers by three women employees of the pharmacy.[6] The only other person present at the robbery who was unable to identify Folkerts was the owner, whose attention was understandably riveted on the gun Tomer held to his head. Tomer testified that Folkerts was his only accomplice and that although he knew Hubbs, Hubbs was not involved in this robbery. Two of Folkerts' fingerprints, with more than 20 points of similarity, were on the paper bag recovered from the area where Folkerts was seen standing immediately prior to the robbery. Tomer's print was also found on the bag. Even though Hubbs was an early suspect, none of his fingerprints were found at the scene of the robbery. When questioned by detectives, Folkerts displayed some special knowledge of the incident when, without any recitation of the details of the incident by the police, he inquired whether the slug from the discharged revolver had been recovered.

In the face of this overwhelming evidence and after Hubbs was permitted to invoke his right against self-incrimination, Folkerts refused to participate further in the trial. He instructed his attorney not to present any testimony on his behalf, even though witnesses were present and willing to testify, and he prohibited his attorney from presenting any argument on his behalf. Under these circumstances, we are satisfied, given the overwhelming

---

curring). This is not one of them. In *State v. Jones*, 101 Wn.2d 113, 677 P.2d 131 (1984), the court held that the erroneous use of the defendant's prior criminal offense for impeachment purposes was an error of constitutional proportions because it impinged on the defendant's right to testify freely in his own defense. Nevertheless, the court then sanctioned the application of the harmless error test to the erroneous admission of the defendant's prior criminal record. If such error, affecting the accused's right to testify on his own behalf, can be measured by the constitutional harmless error standard, we see no reason why the same standard should not be applied to the defendant's claimed denial of the right to compulsory process of witnesses.

[6]A third employee who did not participate in the improper police lineup described in the opinion did not have any difficulty in identifying Folkerts as one of the robbers.

amount of evidence, the admission of Hubbs' excluded testimony would not have resulted in a different verdict. The error, if any, was harmless beyond a reasonable doubt.

Affirmed.

REED, A.C.J., and PETRIE, J. Pro Tem., concur.

Review denied by Supreme Court May 6, 1986.