[Nos. 14761-7-I; 14767-6-I. Division One. December 31, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR LEE SINCLAIR, *Appellant.*

434

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Greg R. Hubbard, Assistant Chief Deputy,* for respondent.

SCHOLFIELD, C.J.—Arthur L. Sinclair appeals his first degree burglary conviction, arguing he was denied his right to counsel and that the court erroneously ruled that he could be impeached with his prior convictions should he choose to testify. Sinclair also appeals his subsequent conviction as a habitual criminal and the revocation of his parole. We affirm.

## FACTS

Sinclair was charged with first degree burglary while armed with a deadly weapon. On the day of trial, December 9, 1983, he requested a substitute for his court–appointed attorney, alleging counsel had lied to him, refused to do

research he had requested and that he had no confidence in her. Counsel confirmed Sinclair's complete dissatisfaction with her representation and asked leave to withdraw.

The trial court ruled that Sinclair had shown no legal basis for discharging appointed counsel. The court told Sinclair if he chose not to be represented by appointed counsel, he had the right to represent himself, but advised him not to do so. Sinclair responded that, if those were his only choices, he would prefer to appear pro se. He prepared a written motion to that effect, which the court granted.

The court advised Sinclair that he would be bound by the rules of evidence and procedure throughout the trial. At appropriate times thereafter, the court also advised Sinclair regarding the procedure involved in his CrR 3.5 hearing, gave a brief explanation of the jury selection process, including the procedure for peremptory challenges, explained the purpose of opening statements and advised Sinclair of when it was appropriate to bring a motion to exclude evidence of his prior convictions.

Sinclair made repeated motions throughout the trial for the appointment of substitute counsel, stating that he was not qualified to represent himself, did not understand the proceedings, felt that the court was taking advantage of him and that he was not receiving a fair trial. Each time, the trial court urged him to take advantage of appointed counsel, who remained in court on standby. Sinclair refused, stating that, if the court would not appoint a different attorney, he preferred to represent himself.

The facts of the burglary incident are not in dispute here. Responding to a prowler report, police apprehended Sinclair in the victim's apartment, after observing him through a window, apparently searching through her belongings. The following day, the victim found a handgun with Sinclair's fingerprints on it hidden in her apartment.

At the close of the State's case, Sinclair indicated his desire to testify and moved to exclude evidence of three prior convictions for burglary and one for grand larceny. After questioning Sinclair concerning the content of his

proposed testimony, the court concluded that his credibility would be a crucial issue and ruled that the prior convictions would be admissible for impeachment purposes. Sinclair declined to testify.

Sinclair was convicted as charged, and based thereon, declared a habitual criminal. His probation on a prior conviction was revoked, and he was sentenced to life in prison.

### RIGHT TO COUNSEL

Sinclair contends the court erred by forcing him to choose between appearing pro se or being represented by appointed counsel and by not conducting a more thorough inquiry into his allegations of misconduct by his appointed counsel. We disagree.

■ Whether or not an indigent defendant's dissatisfaction with court–appointed counsel is justified and warrants the appointment of a new lawyer lies within the sound discretion of the trial court. *State v. Dougherty,* 33 Wn. App. 466, 471, 655 P.2d 1187 (1982); *State v. Brittain,* 38 Wn. App. 740, 689 P.2d 1095 (1984). Thus, even when a defendant does not want to appear pro se, if he fails to provide the court with legitimate reasons why he is entitled to reassignment of counsel, the court can require that he either waive or continue with appointed counsel. *McKee v. Harris,* 649 F.2d 927 (2d Cir. 1981), *cert. denied,* 456 U.S. 917 (1982); *Wilks v. Israel,* 627 F.2d 32, 36 (7th Cir. 1980), *cert. denied,* 449 U.S. 1086 (1981); *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976).

In the case sub judice, the trial court asked Sinclair why he was dissatisfied with appointed counsel. He responded with a vague account of how counsel had lied and had not shown him the State's fingerprint evidence. He otherwise failed to articulate any reason he felt justified counsel's replacement, other than his general discomfort with her representation. In short, Sinclair presented to the trial court no valid reason to replace appointed counsel, nor does he offer on appeal any material reason that would have been elicited had the court inquired further.

■ Sinclair argues that, since he had filed a formal complaint against his lawyer with the Washington State Bar Association, her continued representation would have created a conflict of interest in violation of the Code of Professional Responsibility. Were that sufficient to disqualify court–appointed counsel, however, a defendant could force the appointment of a new attorney simply by filing such a complaint, regardless of its merit. We hold the trial court did not abuse its discretion by denying Sinclair's request for a new attorney.

The waiver of the right to counsel must be knowingly, voluntarily and intelligently made, *Bellevue v. Acrey*, 103 Wn.2d 203, 208–09, 691 P.2d 957 (1984), and the demand to defend pro se must be unequivocal. *State v. Fritz*, 21 Wn. App. 354, 360, 585 P.2d 173, 98 A.L.R.3d 1 (1978). The court should assure that the defendant makes that decision with at least a minimal knowledge of the task involved. *Bellevue v. Acrey, supra* at 210. The preferred method for doing so is a colloquy on the record. In the absence of a colloquy, the record must otherwise show that the defendant understood the seriousness of the charge, the possible maximum penalty and the existence of technical rules governing the presentation of his defense. *Acrey*, at 211. Whether a valid waiver of the right to counsel has been made is within the sound discretion of the trial court. *State v. Chavis*, 31 Wn. App. 784, 787, 644 P.2d 1202 (1982).

■ Sinclair insists that his request to appear pro se was not *unequivocal* since he made it clear he was doing so only because the court refused to appoint a new attorney; consequently, there was no valid waiver of the right to counsel.

However, if there can never be a valid waiver when the defendant expressly conditions his request to appear pro se upon the trial court's refusal to appoint new counsel, the court will always be obliged to accede to the defendant's demand under those circumstances, even if there is no legitimate reason to replace appointed counsel. The result here would be that Sinclair would get by default that which he was not entitled to in the first instance—a different

attorney. Therefore, we decline to follow Sinclair's reasoning.

Sinclair cites *State v. Garcia,* 92 Wn.2d 647, 600 P.2d 1010 (1979) as controlling authority. However, *Garcia* is distinguishable. Garcia never asked to appear pro se, and the court held that such a request could not be inferred from his statement that he did not want to be represented by appointed counsel. Sinclair, on the other hand, repeatedly told the court that he preferred to represent himself rather than be represented by appointed counsel, and he personally submitted a written motion to that effect. In summary, when the trial court has correctly ruled that substitute counsel will not be appointed and the defendant insists that in the absence of substitute counsel he be permitted to defend pro se, his request must be deemed unequivocal.

The remaining question is whether Sinclair's waiver was knowing and intelligent. In that regard, the record demonstrates Sinclair's actual awareness of the risk of self–representation and the task involved. He repeatedly stated he was not qualified to act as his own attorney, did not understand the trial proceedings, did not have access to the witnesses or the resources necessary to prepare his defense, and felt that he was not receiving a fair trial as a consequence. Sinclair's own protestations are the best possible evidence that he was actually aware of the risk attendant with self–representation.

Throughout the trial, the court coached Sinclair on procedural matters and explained various aspects of the proceeding, and it appears from the record that Sinclair was made aware of the "nature and classification of the charge" against him. *Bellevue v. Acrey, supra* at 211. Although the court failed to specifically inform him of the maximum penalty upon conviction, Sinclair had several prior convictions, including three for burglary, one as recent as 1980. We conclude, therefore, that he was well aware of the pos-

sible consequences of another conviction.[1]

■ We hold that the trial court was not obliged to inform Sinclair that habitual criminal charges might be filed as a result of his conviction. *Cf. State v. Shaffer,* 18 Wn. App. 652, 571 P.2d 220 (there is no due process requirement that a criminal defendant entering a plea be advised of the possibility of habitual criminal charges being filed and the resulting increased punishment), *cert. denied,* 439 U.S. 1050 (1977).

In conclusion, the record indicates that Sinclair was not entitled to substitute counsel and that he was actually aware of the risk of self–representation and the task involved. He therefore validly waived his right to counsel.

IMPEACHMENT WITH PRIOR CONVICTIONS

Sinclair contends the trial court erred by failing to adequately balance on the record the probative value of evidence of his prior convictions against its prejudicial effect when determining its admissibility. Although we agree that the trial court erred, we hold that the error was harmless.

The admission of evidence of prior convictions is prejudicial. This prejudice is even greater when the prior offense is the same or similar to the crime for which the defendant is charged. *State v. Jones,* 101 Wn.2d 113, 120, 677 P.2d 131 (1984). Therefore, prior convictions admitted for the purpose of impeachment must bear upon the credibility of the defendant. *State v. Burton,* 101 Wn.2d 1, 7, 676 P.2d 975 (1984); *State v. Jones, supra* at 118–19.

Evidence of prior convictions not involving "dishonesty or false statement" is only admissible under ER 609(a) if the probative value of the evidence outweighs its prejudice.[2] *State v. Alexis,* 95 Wn.2d 15, 17, 621 P.2d 1269

---

[1]We do not maintain that Sinclair's prior experience with the criminal justice system is sufficient by itself to demonstrate an awareness of the risk of self–representation, but it is evidence of that fact. *Cf. Bellevue v. Acrey, supra* at 211.

[2]ER 609(a) states: "For the purpose of attacking the credibility of a witness,

(1980). Since burglary and larceny are not crimes of "dishonesty" within the meaning of the rule, *see State v. Burton, supra,* the burden was on the State, under ER 609(a)(1), to show that the evidence of Sinclair's convictions for those crimes outweighed the prejudice. *State v. Jones, supra* at 120.

The record here reflects no articulation by the trial judge of the factors to be considered in weighing probative value against prejudice. *State v. Jones, supra; State v. Alexis, supra.* In the absence of briefing or argument on the record regarding ER 609, we cannot conclude there was any weighing of probative value against prejudice. We therefore must conclude the trial court erred in ruling that the prior convictions were admissible.

■ The higher "constitutional" harmless error analysis is applied to errors involving the admission of evidence under ER 609(a)(1). Constitutional error is only harmless if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. *State v. Folkerts,* 43 Wn. App. 67, 73, 715 P.2d 157 (1986). Such is the case here.

Sinclair was caught red–handed prowling through the victim's apartment, and his fingerprints were on the handgun later found hidden in the apartment. Sinclair's defense was a general denial of this evidence. Even had he told his side of the story, the State's evidence was so overwhelming that it would necessarily have led to a finding of guilt. The strength of the State's case, moreover, made it less important that the jury hear Sinclair's side of the story. *Cf. State v. Jones, supra* at 121.

The trial court's error was harmless. Sinclair's burglary conviction is affirmed, as are his subsequent conviction as a

---

evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

habitual criminal and the revocation of his parole.

WILLIAMS and WEBSTER, JJ., concur.

Review denied by Supreme Court March 31, 1987.