2016 NOV 21 AM 8:54


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75641-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARLON OCTAVIUS LUVELL HOUSE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 21, 2016 |
| | ) | |

VERELLEN, C.J. — Marlon House appeals from the judgment and sentence on his conviction of two counts of rape of a child in the first degree. House pleaded guilty to the charges and requested a special sex offender sentencing alternative (SSOSA).[1] He contends that the trial court erred when it denied his motion for substitute counsel and his request for a SSOSA. House also contends his counsel was ineffective. The trial court's conclusion that House was not entitled to substitute counsel was supported by the record and counsel's representations to the court. The trial court did not abuse its discretion when it denied a SSOSA. Furthermore, House's counsel's decision to delay interviewing the two child victims was a strategic decision. House failed to show, but for his counsel's performance, the outcome would have been different. Accordingly, we affirm.

---

[1] RCW 9.94A.670.

FACTS

The State charged Marlon House with one count of rape of a child in the first degree and two counts of child molestation in the first degree under cause number 14-1-00938-2 and three counts of rape of a child in the first degree under cause number 14-1-00937-4.

At a status conference on August 22, 2014, House asked for a substitution of counsel. House's counsel informed the court of the procedural and tactical steps that he had taken in the case and the complications that arose because the case involved two separate victims under two separate cause numbers. House's counsel said that he had retained an investigator, who had made contact with every witness that House had identified to him, however, he had not interviewed the two alleged victims in the case. House's counsel explained the prosecutor's policy to discontinue any plea bargaining if the defense interviews the victims of child sex abuse:

> I have advised Mr. House that before we do that I would like to explore any possible resolution, because it's the normal course of the prosecutor's policy that once we interview victims[,] resolution of the case is difficult, if not impossible. So that's where we are.[2]

The court then told House that he could speak and "if I need to have a full hearing, then I will have to reset it, but tell me what it is that you wanted the Court to know."[3] House told the court his counsel "has only talked to me four times since I have been here" and "just called me yesterday because I sent in a grievance to the Bar Association."[4] House

---

[2] Report of Proceedings (RP) (Aug. 22, 2014) at 4.

[3] Id. at 5.

[4] Id.

2

also alluded to a communication issue between his mother and his counsel regarding his "court papers."[5]

House's counsel informed the court that he had spoken with House's mother and that he did not recall a communication issue. The trial court denied House's request for a new public defender and remarked:

> When you have the privilege of hiring your own counsel, then you can hire and fire. When the county pays for it, on the record before me [House's counsel] is moving forward on your case. There [are] no set times that he is required to visit you in preparation for your case
>
> He has interviewed all of the witnesses that you have asked him, except for the alleged victim, and you need to understand that there is a significant import when the alleged victims are interviewed by the defense, any resolution short of trial is impossible after that time.[6]

As part of a plea bargain, the State presented an amended information on both cause numbers. House pleaded guilty to a total of two counts of rape of a child in the first degree. The State recommended a standard sentence range of 120 to 160 months to life in each case to run concurrent to one another, and House requested a SSOSA.

House underwent a psychosexual examination by Michael Comte, who submitted his report to the court regarding House's eligibility for a SSOSA. House provided the court with Comte's psychosexual evaluation, treatment plan, and the results of a sexual history interview polygraph examination. Comte testified during the sentencing hearing. House also wrote a letter and addressed the court.

The State filed a sentencing memorandum arguing that House was not eligible because of his lack of candor and honesty during Comte's evaluation. The State's

---

[5] Id. at 6.

[6] Id. at 7.

memorandum also questioned Comte's conclusion that House was amenable to treatment. The State submitted two victim impact statements from the mothers of the victims, along with the presentence investigation reports opposing a SSOSA.

After reviewing all of the documents and considering the factors outlined in RCW 9.94A.670, the trial court denied House's request for a SSOSA and sentenced him to 160 months to life on each count, concurrent with one another.

House appeals.

## ANALYSIS

*I. Request for a New Attorney*

House argues the trial court abused its discretion when it denied his request for a new attorney.

A defendant in a criminal prosecution has a right to the assistance of counsel.[7] Indigent defendants charged with felonies or misdemeanors involving potential incarceration are entitled to appointed counsel.[8] The determination whether an indigent defendant's dissatisfaction with his court-appointed counsel warrants appointment of substitute counsel rests within the sound discretion of the trial court.[9] "The court should consider the reasons given for the defendant's dissatisfaction, together with its own evaluation of the competence of existing counsel and the effect of substitution upon the scheduled proceedings."[10]

---

[7] U.S. CONST. amend VI; WASH. CONST. art. 1, § 22 (amend. 10).

[8] McInturf v. Horton, 85 Wn.2d 704, 705-07, 538 P.2d 499 (1975); CrR 3.1(d)(1).

[9] State v. Stark, 48 Wn. App. 245, 252, 738 P.2d 684 (1987); State v. Lytle, 71 Wn.2d 83, 84, 426 P.2d 502 (1967); State v. Shelton, 71 Wn.2d 838, 840, 431 P.2d 201 (1967); State v. Sinclair, 46 Wn. App. 433, 436, 730 P.2d 742 (1986).

[10] Stark, 48 Wn. App. at 253.

A trial court conducts an adequate inquiry when it allows the defendant and counsel to fully express their concerns.[11] "Unsupported general allegations of deficient representation are inadequate to support a motion [for new counsel]."[12] To justify an appointment of new counsel, a defendant "'must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.' Generally, a defendant's loss of confidence or trust in his counsel is not sufficient reason to appoint new counsel."[13]

House asserts his counsel's refusal to interview the two victims in his case warranted the appointment of a new attorney, but House's counsel explained:

> I have not interviewed the two alleged victims yet. I have advised Mr. House that before we do that[,] I would like to explore any possible resolution, because it's the normal course of the prosecutor's policy that once we interview victims[,] resolution of the case is difficult, if not impossible. So that's where we are.[14]

Not only did House's counsel explain why he had not yet interviewed the victims, but he also described his progress and efforts on House's behalf.

Additionally, House argues the trial court made comments that appeared to be biased or unfair. Specifically, he contends, the "when the county pays for it" comment,[15]

---

[11] State v. Schaller, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007).

[12] State v. Staten, 60 Wn. App. 163, 170, 802 P.2d 1384 (1991).

[13] State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004) (quoting State v. Stenson, 132 Wn.2d 733, 734, 940 P.2d 1239 (1997))

[14] RP (Aug. 22, 2014) at 4.

[15] Id. at 7.

in context, reveals the court gave "less weight to the grievances of an indigent defendant."[16]

"'An appearance of fairness claim requires proof of actual or potential bias. Mere speculation is not enough. Furthermore, we presume a judge performs his or her duties without prejudice.'"[17] House's assertion relies on speculation and innuendo and fails to prove actual or potential bias.

The trial court conducted a sufficient inquiry and did not abuse its discretion when it denied House's request for a new attorney.

## II. Denial of SSOSA

House argues the trial court abused its discretion when it denied a SSOSA because the denial was based on a deficient psychosexual evaluation and a clearly erroneous finding.

Under RCW 9.94A.670, certain sex offenders are eligible to receive a sentencing alternative. Once a defendant is eligible for a SSOSA, the trial court may order the defendant to undergo an examination to determine whether the defendant is amenable to treatment.[18] RCW 9.94A.670(3)(a) provides:

> (a) The report of the examination shall include at a minimum the following:
>
> (i) The offender's version of the facts and the official version of the facts;

---

[16] Appellant's Br. at 21.

[17] State v. Afeworki, 189 Wn. App. 327, 356, 358 P.3d 1186 (2015) (quoting State v. Harris, 123 Wn. App. 906, 914, 99 P.3d 902 (2004), abrogated on other grounds by State v. Hughes, 154 Wn.2d 118, 110 P.3d 192 (2005)), review denied, 184 Wn.2d 1036 (2016).

[18] RCW 9.94A.670(3).

(ii) the offender's offense history;

(iii) An assessment of problems in addition to alleged deviant behaviors;

(iv) The offender's social and employment situation; and

(v) Other evaluation measures used.[19]

The statute requires the report to set forth the source of the examiner's information along with an assessment of "the offender's amenability to treatment and relative risk to the community.[20] "The court on its own motion may order, or on a motion by the State shall order, a second examination regarding the offender's amenability to treatment."[21] After the court receives the reports, it must consider numerous factors to determine whether a SSOSA is appropriate.[22] We review a trial court's refusal to impose a SSOSA for an abuse of discretion.[23]

House asserts Comte's psychosexual evaluation was deficient and the court should have ordered a supplemental report because the report failed to detail House's version of events.

In House's three meetings with Comte, House's version of the events migrated from the events did not transpire to his admitting sexual activity with the victims. At the second meeting, House told Comte "he was going to admit to all the allegations, despite the fact he was not guilty of them in order to take advantage of a plea offer, if one was

---

[19] RCW 9.94A.670(3)(a).

[20] RCW 9.94A.670(3)(b).

[21] RCW 9.94A.670(3)(c).

[22] RCW 9.94A.670(4).

[23] State v. Frazier, 84 Wn. App. 752, 753, 930 P.2d 345 (1997).

proposed."[24] House admitted having difficulty acknowledging what he had done and only began to admit something had occurred after he learned about the necessary steps to obtain a SSOSA. Any deficiency in the report regarding House's version of the events was the result of his own refusal to discuss them.

Most importantly, a supplemental report was not required because the original report complied with the statutory requirements. The report was over 10 pages in length and provided a sufficient account of both parties' version of the events. It included House's background information, medical history, academic achievement, employment history, sexual history, and psychological and substance abuse history. The report also contained Comte's opinion that House was amenable to treatment, a low risk to the community, and set forth a proposed treatment plan. Comte also testified, clarifying additional details.

Next, House argues the trial court erred in finding the polygraph questions were insufficient to determine whether there were additional victims. We review a trial court's factual finding for substantial evidence.[25] During sentencing, the trial court stated:

> Whether there are additional victims is unknown. The questions that were asked in the polygraph suggest no. The questions were also phrased to take victims out of the age group for which these two victims find themselves, ages eight and nine. The question in the polygraph focused on [a] different age group.[26]

House argues this finding was not supported by substantial evidence because the questions did include the age group of the victims, eight and nine years old. The relevant questions during the polygraph examination were:

---

[24] Clerk's Papers (CP) at 65.

[25] State v. Grewe, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991).

[26] RP (July 14, 2015) at 82.

Q:    After the age of 18, approximately how many sexual partners have you had?

A:    Doesn't know for sure, at least over a hundred.

Q:    Were any of these females under 18 YOA while you were an adult?

A:    Yes. Maybe 7 at the most. These girls were in the 16-17 years of age range and he was in the 18-20 years of age range at the time.

Q:    Were any of these females under 16 YOA?

A:    No.[27]

The question asking if any of the females were under age 16, as phrased, referred to the time when House was between 18 and 20 years of age. Because a reasonable person would infer that the question refers to the time period when House was between 18 and 20 years of age, the polygraph does not resolve whether there are additional victims. The record supports the trial court's concern.

The trial court performed a sufficient analysis using the factors required by the statute to determine whether House was eligible for a SSOSA. There may be conflicting interpretations of the polygraph results, but we conclude the trial court did not abuse its discretion when it denied House's request for a SSOSA.

### III. Ineffective Assistance of Counsel

House argues his counsel was ineffective during the plea bargaining phase because he did not "adequately investigate."[28]

In order to establish ineffective assistance, House must demonstrate both that counsel's representation fell below an objective standard of reasonableness and that

---

[27] CP at 79.

[28] Appellant's Br. at 22.

prejudice resulted.[29] "In satisfying the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[30] When counsel's alleged error is the failure to investigate exculpatory evidence, the assessment of whether the error prejudiced the defendant involves the likelihood that the evidence "'would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.'"[31] To provide constitutionally adequate assistance, "'counsel must, at a minimum, conduct a reasonable investigation enabling [counsel] to make informed decisions about how to best represent [the] client.'"[32]

We begin our analysis with the "strong presumption" that counsel's performance was reasonable.[33] To rebut this presumption, House must establish the absence of any conceivable legitimate tactic explaining his counsel's performance.[34] We review ineffective assistance claims de novo.[35]

---

[29] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

[30] In re Pers. Restraint of Riley, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

[31] State v. Garcia, 57 Wn. App. 927, 933, 791 P.2d 244 (1990) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

[32] In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001) (emphasis omitted) (alterations in original) (quoting Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994)).

[33] State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

[34] State v. Grier, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011).

[35] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

House focuses on his counsel's failure to interview the victims before entering a guilty plea. The record reveals it is the normal policy of the Pierce County Prosecutor's Office to terminate all plea negotiations and proceed to trial after the defense interviews the victims of child sexual abuse cases. House's counsel chose to delay interviewing the victims in House's case in order to "explore any possible resolution."[36] It was in his reasoned professional judgment that once he interviewed the victims, any offer to resolve the case before trial would no longer be available to House. Furthermore, the record indicates House's counsel performed all other interviews House requested.

We conclude House's counsel's decision to delay interviewing the victims in order to successfully pursue a plea bargain, reducing pending charges, was a legitimate strategic decision. House is unable to show his counsel's performance was deficient or that his counsel's performance prejudiced him.

House also contends his counsel was ineffective when he failed to ensure the psychosexual evaluation met the statutory requirements or to request a continuance to submit a supplemental report, or to perform a redirect examination on Comte at the sentencing hearing.

House fails to establish his counsel's performance was deficient. As discussed, Comte's report was adequate, and his testimony clarified details. Further, even if House's counsel had requested a supplemental report or questioned Comte further, House fails to establish under the second prong of the analysis how the trial court's decision would have been different. The court focused on the "huge" risk to the

---

[36] RP (Aug. 22, 2014) at 4.

community and the victims' opposition to a SSOSA.[37]  The trial court also expressed concern with House's lack of candor and acknowledgement of his behavior.

House fails to show his counsel was ineffective.

Affirmed.

WE CONCUR:

_Trickey, J_

_Becker, J._

---

[37] RP (July 14, 2015) at 83.